IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SERITA R. JAMES | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JESSICA MICHALSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  10-cv-01402 |
| | ) | |
| CASEY'S GENERAL STORES, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| and | ) | |
| | ) | |
| AUDREY DAMES | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEBORAH MINER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES BROWN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DANA MORSE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## PARTIES & JURISDICTION

1.      At all times relevant herein, Plaintiff, Serita James (hereinafter "James"), was and

is a resident of Jefferson County, State of Missouri, and a citizen of the United States of

America, who was residing within the boundaries of the Eastern Division of the Eastern District

of Missouri.  At all times relevant, James was employed by Casey's General Stores, Inc. at Store

No. 2450 located in Hillsboro, Missouri.

2.      At all times relevant herein, Plaintiff, Jessica Michalsen (hereinafter "Michalsen") was and is a resident of Jefferson County, State of Missouri and a citizen of the United States of America, who was residing within the boundaries of the Eastern Division of the Eastern District of Missouri.  At all times relevant, Michalsen was employed by Casey's General Stores, Inc. at Store No. 2450 located in Hillsboro, Missouri.

3.      At all times relevant herein, Defendant Casey's General Store, Inc. (hereinafter "Casey's") was and is a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Iowa.  Casey's is registered to do business within the State of Missouri and has substantial contacts with the State of Missouri through the operation of its stores in the State, including Store No. 2450 located in Hillsboro, Missouri.  Upon information and belief, Casey's has engaged in a pattern and practice, custom and usage of flaunting state and federal employment protection laws, putting profits above its employees.

4.      At all times relevant herein, Defendant Audrey Dames (hereinafter "Dames") was a District Manager for Casey's in the geographic region which included Casey's Store No. 2450 in Hillsboro, Missouri and was acting in the course and scope of her employment with Casey's.

5.      At all times relevant herein, Defendant Deborah Miner (hereinafter "Miner") was the Manager of Casey's Store No. 2450 in Hillsboro, Missouri and was acting in the course and scope of her employment with Casey's

6.      At all times relevant herein, Defendant James Brown (hereinafter "Brown") and Dana Morse (hereinafter "Morse') were Assistant Managers of Casey's Store No. 2450 in Hillsboro, Missouri and were acting in the course and scope of their employment with Casey's.

7.      This action is brought pursuant to 42 U.S.C. §§ 12101 *et seq.*  This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 12101 *et seq.* and 28 U.S.C. § 1331.

2

Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events complained of herein occurred in this District.

8.       Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO PLAINTIFF JAMES' COUNTS

9.       On August 11, 2004, James was hired as a cashier and cook at Casey's Store No. 2450 in Hillsboro, Missouri.

10.      By November 27, 2004 James had earned a merit increase to her hourly pay.  In James' Payroll Change Notice dated November 27, 2004, Miner wrote "Serita is a great asset to our company" and "I wish all my employees were like her."

11.      In a subsequent evaluation dated June 10, 2005, Miner wrote "Serita is one of my best employees, I value her as a team member and would hate to lose her as an employee." Additionally, the evaluation noted that "Serita has never called off, been late, or asked for days off."  In James's Payroll Change Notice dated June 10, 2005, Miner wrote "Serita is an exceptional worker.  She is never late, never missed a shift.  She has excellent customer service." James's hourly pay was again increased.

12.      In July 2006, Miner again raised James' pay, writing in support of this increase, "Serita is a very valuable employee to the company.  She has been with the company for 2 years. She has never missed a day's work, she is always on time and will complete any task I give her to do."

13.      In James' evaluation dated August 23, 2006, Miner stated "Serita is a very hard and dedicated worker.  She is always here for her shifts, never calls off, and will do any task that is asked of her.  She knows what teamwork is and gives it back 100%."  Miner further stated,

"Serita has never called off in her time with us in the past 2 years." James's pay was again increased.

14.     In James' September 2007 evaluation, Miner rated James as exceeding expectations and stated, "Serita I like the way that you take time to make sure that everything is right so that our customers are happy when they leave here. I appreciate that. Thank you." In September 2007, James's pay was again increased.

15.     In April 2008, James was working and heard a loud pop in her elbow while she was unloading a truck and stocking. Even though James was injured, Miner made her complete her shift (approximately three hours after she was injured), delaying James from seeing a doctor related to this injury.

16.     On or about June 4, 2008, James suffered a work-related injury when she fell due to a wet floor. Ultimately it was determined that James suffered a herniated disk as result of this fall.

17.     On or about June 12, 2008, only eight days after suffering a work-related injury, James received her first Corrective Action Statement from Casey's. This was the first of at least five (5) Corrective Actions Casey's issued against James after she was seriously injured at work.

18.     James attempted to return to work despite her serious injury but found that she was continually reinjuring herself. On or about June 20, 2008, James was bending over to pick up cups, when she experienced such pain that she collapsed to the floor and was unable to get up. James requested that one of the other employees working in the store call an ambulance to take her to the hospital. However, Defendants Brown and Morse would not allow any other employee to call James an ambulance, claiming that James was "hurting" Casey's image. James had to call the ambulance herself, using her own cell phone because Casey's would not permit an

ambulance to be called for her.

19.     On a second occasion, James was on the floor in pain and agony and Defendants would not permit an ambulance to be called for her.

20.     On or about June 23, 2008, James's physician, Dr. Krewitt told James she was unable to return to work due her work-related injury/disability.  James was off work until on or about July 14, 2008 due to the serious nature of her injury/disability.  When Dr. Krewitt advised James that she should not return to work until she had surgery, Casey's sent her to a different workers' compensation doctor, who returned her to work on light duty.

21.     While James' medical care was provided through workers' compensation after her work-related injury, Casey's initially denied coverage for the time she was required to be off work as a result of this injury.

22.     As set forth above, James was required to return to work in July 2008 after she was released for light duty by a new workers' compensation doctor, with restrictions that she work in a sedentary capacity, lift no more than ten pounds, and alternate between sitting and standing.

23.     Although James was hired as both a cook and cashier, after her injury, James was scheduled in the kitchen, making it impossible for her to comply with her light duty restrictions. Defendants refused to recognize James' restrictions, telling her she could do anything any other employee could do.  Additionally, Defendants refused to provide James with a chair to allow her to alternate between sitting and standing and assigned James to the kitchen area where it was impossible for her to sit while working.  James' restrictions were reasonable accommodations for her physical disability.

24.     When James would attempt to sit in a chair to alternate between sitting and

5

standing, Defendants would find work for her to do that would prevent her from sitting and/or would take the chair away from James, telling her that if she were permitted to sit down while working, other employees would want to do the same.

25.      Defendants refusal to accommodate James caused her serious and substantial pain, requiring her to visit the emergency room during work on more than one occasion.  Upon information and belief, Casey's failure and refusal to accommodate James' medical condition/ disability exacerbated her injury.

26.      Additionally, and without waiver of the foregoing, James was hired to work weekday shifts.  Upon returning to work after her work-related injury, she was required to work weekends.  Upon information and belief, James' schedule was changed in an effort to force her to quit.

27.      On or about August 28, 2008, James was experiencing pain at work due to her work-related injury/disability that was so severe that she was crying.  James spoke to Brown by telephone and he told her that she was allowed to go home.  However, Brown later placed a Corrective Action Statement in James' employment file for leaving work without permission.

28.      On or about November 22, 2008, James was in so much pain after working her regular shift that she wanted to end her life.  She was admitted to the Hyland Center on November 22, 2008.

29.      James' husband, Robert James, contacted Miner to let Miner know that James had been admitted to the hospital and would not be able to work the next day.  Miner told Robert James that if anything changed with respect to James' status or condition, he should call.  Robert James was never told that he would have to call Miner every day to advise Miner of James' status and whether she remained in the hospital and James was in no condition to call Casey's

6

regarding her condition due to her hospitalization

30.     On November 28, 2008, after James was released from the hospital, she took a doctor's note to Defendants informing them that she had been hospitalized and that she could not return to work until December 17, 2008.  At the time that James provided this doctor's note, no one advised her that she had been terminated by Casey's.  In fact, Defendants contacted James and told her that her note was unacceptable and that she would need to get another doctor's note, which James attempted to do.

31.     On November 28, 2008, James purportedly was terminated by Defendants allegedly for violating Casey's no call no show policy even though James, through her husband, had called Casey's to advise it that she was unable to work due to her hospitalization.

32.     On May 5, 2010, James received a right to sue letter from the Missouri Commission on Human Rights.  On May 10, 2010, James received a right to sue letter from the Equal Employment Opportunity Commission.

## FACTS COMMON TO PLAINTIFF MICHALSEN'S COUNTS

33.     On March 3, 2008, Michalsen was hired as a cashier and cook at Casey's Store No. 2450 in Hillsboro, Missouri.

34.     On June 24, 2008, Michalsen suffered a work-related crush injury of her wrist during her shift at Casey's due to a freezer door being closed on her wrist.  Initially Miner would not let Michalsen go to the hospital.  However, Dames told Miner she had to let Michalsen leave to seek medical treatment.

35.     Even though Michalsen suffered a serious injury at work, which would not allow her to drive due to her inability to use her right arm and operate the gear shift on her car, Defendants would not allow an ambulance to be called for Michalsen to go to the hospital

emergency room.  Instead, Dames wrapped Michalsen's wrist in ice, put down the armrest in Michalsen's car, put Michalsen's car in drive, and instructed Michalsen to drive herself to the emergency room.

36.     Michalsen was unable to return to work due to her work-related injury for approximately three months.  During her disability leave, Michalsen received only three payments for lost wages under Missouri's Workers' Compensation Act.

37.     On or about September 8, 2008, Michalsen returned to work at Casey's.

38.     On or about September 9, 2008, Michalsen's wrist became swollen.  Michalsen showed Miner her swollen wrist and requested that she be permitted to leave to seek medical attention.  Miner refused to let Michalsen leave, and therefore, she completed her shift.

39.     Upon information and belief, Defendants failure and refusal to allow Michalsen to seek and/or obtain proper medical attention made her injury worse.

40.     On or about the morning of September 10, 2008, Michalsen's wrist was still swollen and had turned purple.  She called in at 7:30 a.m. to report that she could not come into work because she needed to see a doctor about her wrist.  She was told that the store was expecting a grocery order and that if she did not come to work that day, she would no longer have a job.  Therefore, Michalsen understood that she was fired on September 10, 2008 when she could not report to work because she had to seek medical attention for her wrist.

41.     Michalsen was discharged on September 15, 2008, purportedly for violating Casey's no call/no show policy after two days of unreported absences, even though she was told that she no longer had a job with Casey's on September 10, 2008.

42.     On May 5, 2010, Michalsen received a right to sue letter from the Missouri Commission on Human Rights.  On May 10, 2010, Michalsen received a right to sue letter from

the Equal Employment Opportunity Commission.

## COUNT I
## PLAINTIFF JAMES' CLAIM FOR DISCRIMINATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITY
## ACT AND MISSOURI HUMAN RIGHTS ACT

For Count I of Plaintiff Serita James' cause of action against all Defendants, Plaintiff states:

43.     Plaintiff James incorporates by reference each and every fact and allegation contained in Paragraphs 1 through 42 above as if fully set forth herein.

44.     James suffered from a work-related back injury on or about June 4, 2008.

45.     James' back injury was a disability within the meaning of the Americans with Disabilities Act, § 12101 *et seq.,* and the Missouri Human Rights Act, § 213.055 R.S.Mo., in that it constitutes a physical impairment that substantially limits her in one or more major life activity.  Specifically, James' disability substantially limits her ability to perform manual tasks, walk, work, stand, lift and reach.

46.     James was otherwise qualified to perform the essential functions of her job with reasonable accommodation from Defendants.

47.     Defendants knew of James' disability resulting from her work-related back injury, which disability was a motivating factor in James' termination by Defendants.

48.     Additionally, and without waiver of the foregoing, upon information and belief the conduct of the Defendants exacerbated James' injury causing her to incur medical bills and expenses and increasing her physical pain and suffering.

49.     As a direct and proximate result of the conduct of the Defendants, James has sustained and will continue to sustain lost wages and other benefits of employment and medical bills and expenses, and has suffered and will continue to suffer physical and emotional

pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

50.     The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to James' federal and state statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Serita James prays this Court to enter judgment in her favor against all Defendants and thereafter:

A.     Order Defendants to make her whole for any and all loses or damages she has suffered including lost wages and other benefits of employment and her medical bills and expenses resulting from any exacerbation of her injury by Defendants;

B.     Award damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation, as well as damages for her physical pain and suffering caused by the Defendants;

C.     Award Plaintiff punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT II
## PLAINTIFF MICHALSEN'S CLAIM FOR DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT AND MISSOURI HUMAN RIGHTS ACT

For Count II of Plaintiff Jessica Michalsen's cause of action against all Defendants, Plaintiff states:

51.     Plaintiff Michalsen incorporates by reference each and every fact and allegation contained in Paragraphs 1 through 50 above as if fully set forth herein.

52.     Michalsen suffered from a work-related wrist injury on or about June 24, 2008.

53.     Michalsen's wrist injury was a disability within the meaning of the Americans with Disabilities Act, § 12101 *et seq.,* and the Missouri Human Rights Act, § 213.055 R.S.Mo., in that it constitutes a physical impairment that substantially limits her in one or more major life activity.  Specifically, Michalsen's disability substantially limits her ability to perform manual tasks, work, lift, and reach.

54.     Michalsen was otherwise qualified to perform the essential functions of her job with reasonable accommodation from Defendants.

55.     Defendants knew of Michalsen's disability resulting from her work-related wrist injury, which disability was a motivating factor in Michalsen's termination by Defendants.

56.     Additionally, and without waiver of the foregoing, upon information and belief the conduct of the Defendants exacerbated Michalsen's injury causing her to incur medical bills and expenses and increasing her physical pain and suffering.

57.     As a direct and proximate result of the conduct of the Defendants, Plaintiff has sustained and will continue to sustain lost wages and other benefits of employment and medical bills and expenses, and has suffered and will continue to suffer physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

58.     The conduct of Defendants as set forth herein was wanton, willful, and showed a

reckless indifference to Michalsen's federal and state statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Jessica Michalsen prays this Court to enter judgment in her favor against all Defendants and thereafter:

A.      Order Defendants to make her whole for any and all loses or damages she has suffered including lost wages and other benefits of employment and her medical bills and expenses resulting from any exacerbation of her injury by Defendants;

B.      Award damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation, as well as damages for her physical pain and suffering caused by the Defendants;

C.      Award Plaintiff punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III
## PLAINITFFS' HOSTILE WORK ENVIRONMENT CLAIM IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND MISSOURI HUMAN RIGHTS ACT

For Count III of their cause of action against all Defendants, Plaintiffs James and Michalsen state:

59.      Plaintiffs incorporate by reference each and every fact and allegation contained in

paragraphs 1 through 58 above as if fully set forth herein.

60.     For the reasons set forth above, Plaintiffs are members of the class of people protected by the Americans With Disabilities Act and the Missouri Human Rights Act by reason of their physical disabilities.

61.     Plaintiffs were subjected to unwelcome harassment and a hostile work environment by Defendants because of their disabilities in that Defendants:

a.     Required Plaintiffs to return to work before they were physically able to do so;

b.     Refused to accommodate Plaintiffs' physical disabilities, to include but not necessarily be limited to refusing to honor the limitations James was placed under when she returned to work and refusing to permit Michalsen to go to the doctor when needed.

c.     Refused to allow Casey's employees to call an ambulance for James when she was on the store floor in excruciating pain and unable to stand up due to the pain resulting from her disability.

d.     Changed James' work schedule from weekdays to weekends after prematurely forcing her to return to work, upon information and belief in an effort to cause her to quit.

e.     Gave James permission to leave work due to the pain she was suffering from her disability, and then wrote her up for leaving work without permission.

f.     Began issuing James unfounded Corrective Action Statements after she became disabled, even though she was regarded as an exemplary employee prior to her disability.

g.     Told Michalsen that if she did not report to work with her wrist swollen and purple, she would be fired, causing Michalsen to believe that she had been terminated when she choose to see her doctor.  Defendants then falsely reported that Michalsen was terminated for violating Casey's no call no show policy, even though Michalsen had already been fired.

h.     Refused to allow a Casey's employee to call Michalsen an ambulance after she injured her wrist, instead placing Michalsen in her car, placing her injured wrist on the arm rest, placing the car in drive for Michalsen, and making her drive herself to the hospital.

i.     Falsely claimed that James violated the company's no call no show policy as the reason to fire her, even though Defendants knew that James was hospitalized as a result of excruciating pain and did not allow her to present evidence that she was in fact hospitalized and should not have been fired after her release from the hospital.

j.     Upon information and belief, exacerbated Plaintiffs' injuries as a result of their conduct.

62.   The harassment set forth above was severe enough to affect the terms, conditions, and/or privileges of Plaintiffs' employment.

63.   Defendants discriminatory and abusive actions created an atmosphere that was both subjectively hostile or abusive to Plaintiffs and severe and pervasive enough to create a work environment that a reasonable person would objectively find hostile or abusive.

64.   Casey's was aware of the acts of Dames, Miner, Brown, and Morse designed to deprive Plaintiffs of their rights secured by the laws of the United States and State of Missouri,

14

and their failure and/or refusal to act in the face thereof amounted to a tacit authorization of, or ratification of, or deliberate indifference to such conduct.

65.     As a direct and proximate result of the hostile work environment created by the Defendants as set forth herein, Plaintiffs have sustained and will continue to sustain lost wages and other benefits of employment and medical bills and expenses, and have suffered and will continue to suffer physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

66.     The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiffs' federal and state statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs Serita James and Jessica Michalsen pray this Court to enter judgment in their favor against all Defendants and thereafter:

A.     Order Defendants to make them whole for any and all loses or damages they have suffered including lost wages and other benefits of employment and their medical bills and expenses resulting from any exacerbation of their injuries by Defendants;

B.     Award damages to Plaintiffs for their emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation, as well as damages for their physical pain and suffering caused by the Defendants;

C.     Award Plaintiffs punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiffs the costs of this action, together with their reasonable attorneys'

fees; and

     E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT IV**
**PLAINTIFF JAMES'S WRONGFUL DISCHARGE IN**
**VIOLATION OF MISSOURI PUBLIC POLICY CLAIM**

In the alternative to but without waiver of Counts I and III of this Complaint, for Count IV of her cause of action against all Defendants, Plaintiff Serita James states as follows:

67.     Plaintiff James incorporates by reference each and every fact and allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

68.     James was an employee of Casey's prior to suffering injuries in the course of and arising out of her employment by Casey's.

69.     James exercised rights granted by the Missouri Workers' Compensation Act as set forth in Chapter 287 R.S.Mo.  Specifically, she was required to take time off from work and received treatment as the result of a work-related injury.

70.     Defendants discriminated against James by issuing false Corrective Action Statements against her after she exercised her rights under Chapter 287 and then discharged James because she exercised her rights under Chapter 287.

71.     An exclusive causal connection exists between James' exercise of her rights under the Missouri Workers' Compensation Act and the Defendants' discrimination against her and her ultimate discharge by them.

72.     Defendants discharged James knowing that she was absent from work due to her work-related injury and with the intent to discriminate against James because of her exercise of her rights under the Missouri Workers' Compensation Act.

16

73.     Plaintiff's termination was in contravention of Missouri public policy, which prohibits an at-will employee from being discriminated against or discharged in retaliation for exercising rights under the Missouri Workers' Compensation Act.  The Conduct of Defendants as set forth above violates § 287.780 R.S.Mo.

74.      As a result of her termination in violation of public policy, James has sustained and will continue to sustain lost wages and other benefits of employment, and has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

75.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of James in wrongfully terminating her employment in retaliation for exercising her rights under Missouri's Workers' Compensation Act, and therefore, an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Serita James prays this Court to enter judgment in her favor and against all Defendants and thereafter:

A.     Order Defendants to make Plaintiff whole for any and all loses or damages she has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff for her emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.     Award Plaintiff punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff the costs of this action, together with her reasonable

attorneys' fees; and

      E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT V**
**PLAINTIFF MICHALSEN'S WRONGFUL DISCHARGE IN**
**VIOLATION OF PUBLIC POLICY CLAIM**

      In the alternative to an without waiver of Counts II and III of this Complaint, for Count V of her cause of action against all Defendants, Plaintiff Michalsen states as follows:

      76.     Plaintiff incorporates by reference each and every fact and allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

      77.     Michalsen was an employee of Casey's prior to suffering an injury to her wrist in the course of and arising out of her employment with Casey's.

      78.     Michalsen exercised rights granted under Missouri's Workers' Compensation Act as set forth in Chapter 287 R.S.Mo.  Specifically, she received treatment for a work-related injury and payment for missing work as a result of that injury.

      79.     Defendants discharged Michalsen because she exercised her rights under Chapter 287.

      80.     An exclusive causal connection exists between Michalsen's exercise of her rights under Missouri Workers' Compensation Act and her discharge by Defendants.

      81.     Defendants discharged Michalsen knowing that she was absent from work due to her work-related injury, which required her to see her workers' compensation doctor the day she was fired, with the intent to discriminate against Michalsen because of her exercise of her rights under the Missouri Workers' Compensation Act.

      82.     Plaintiff's termination was in contravention of Missouri public policy, which

18

prohibits an at-will employee from being discriminated against or discharged in retaliation for exercising rights under the Missouri Workers' Compensation Act.  The Conduct of Defendants as set forth above violates § 287.780 R.S.Mo.

83.      As a result of her termination in violation of public policy, Michalsen has sustained and will continue to sustain lost wages and other benefits of employment, and has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

84.      Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Michalsen in wrongfully terminating her employment in retaliation for exercising her rights under Missouri's Workers' Compensation Act, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Jessica Michalsen prays this Court to enter judgment in her favor and against all Defendants and thereafter:

A.      Order Defendants to make Plaintiff whole for any and all loses or damages she has suffered including lost wages and other benefits of employment;

B.      Award damages to Plaintiff for her emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.      Award Plaintiff punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT VI**
**CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS**
**AGAINST DEFENDANTS BROWN, MINER AND DAMES**

For Count VI of their cause of action against Defendants Audrey Dames, Deborah Miner, and James Brown and Dana Morse, Plaintiffs state as follows:

85.     Plaintiffs allege and incorporate by reference as if fully set forth herein paragraphs 1 through 66 above.

86.     Defendants Dames, Miner, Brown, and Morse conspired together and amongst themselves and as a result reached a mutual understanding to deprive Plaintiffs of their civil rights under the Americans with Disabilities Act and/or to undertake a course of conduct to protect each other from the consequences of their wrongful acts and/or statutory deprivations as employees of Casey's and in furtherance of  this conspiracy violated Plaintiffs' civil rights.  In furtherance of this conspiracy, Defendants Dames, Miner, Brown, and Morse committed the following overt acts:

a.     Required Plaintiffs to return to work before they were physically able to do so;

b.     Refused to accommodate Plaintiffs' physical disabilities, to include but not necessarily be limited to refusing to honor the limitations James was placed under when she returned to work and refusing to permit Michalsen to go to the doctor when needed.

c.     Refused to allow Casey's employees to call an ambulance for James when she was on the store floor in excruciating pain and unable to stand up due to the pain

20

resulting from her disability.

      d.     Changed James' work schedule from weekdays to weekends after prematurely forcing her to return to work, upon information and belief in an effort to cause her to quit.

      e.     Gave James permission to leave work due to the pain she was suffering from her disability, and then wrote her up for leaving work without permission.

      f.     Began issuing James unfounded Corrective Action Statements after she became disabled, even though she was regarded as an exemplary employee prior to her disability.

      g.     Told Michalsen that if she did not report to work with her wrist swollen and purple, she would be fired, causing Michalsen to believe that she had been terminated when she choose to see her doctor. Defendants then falsely reported that Michalsen was terminated for violating Casey's no call no show policy, even though Michalsen had already been fired.

      h.     Refused to allow a Casey's employee to call Michalsen an ambulance after she injured her wrist, instead placing Michalsen in her car, placing her injured wrist on the arm rest, placing the car in drive for Michalsen, and making her drive herself to the hospital.

      i.     Falsely claimed that James violated the company's no call no show policy as the reason to fire her, even though Defendants knew that James was hospitalized as a result of excruciating pain and did not allow her to present evidence that she was in fact hospitalized and should not have been fired after her release from the hospital.

j.      Upon information and belief, exacerbated Plaintiffs' injuries as a result of their conduct.

87.     Dames, Miner, Brown, and Morse shared the general conspiratorial objective which was to discriminate against and otherwise abuse Plaintiffs by creating a hostile work environment because of their disabilities and when this did not cause Plaintiffs to quit, by discharging them for the pretextural reason of violating Casey's no call no show policy.

88.     Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the outrageous and unlawful acts of these Defendants as described herein, showing a tacit understanding to carry out the prohibited conduct.

89.     As a direct and proximate result of the conspiracy amongst Dames, Miner, Brown, and Morse and in furtherance of this conspiracy, Plaintiffs were subjected to a hostile and oppressive work environment and then fired when such hostile and oppressive work environment did not force them to quit.

90.     Additionally, and without waiver of the foregoing, upon information and belief the conduct of the Defendants exacerbated Plaintiffs' injuries causing them to incur medical bills and expenses and increasing their physical pain and suffering.

91.     As a direct and proximate result of the actions of Dames, Miner, Brown, and Morse in furtherance of their conspiracy, Plaintiffs have sustained and will continue to sustain lost wages and other benefits of their employment and medical bills and expenses, and have suffered and will continue to suffer physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of

22

reputation.

92.     The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiffs' federal and state statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs Serita James and Jessica Michalsen pray this Court to enter judgment in their favor and against Defendants Audrey Dames, Deborah Miner, James Brown, and Dana Morse and thereafter:

A.     Order Defendants to make Plaintiffs whole for any and all loses or damages they have suffered including lost wages and other benefits of employment and lost employment opportunities and their medical bills and expenses resulting from any exacerbation of their injuries by Defendants;

B.     Award damages to Plaintiffs for their emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation , as well as damages for their physical pain and suffering caused by the Defendants;

C.     Award Plaintiffs punitive damages against the Defendants in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT VII
## CIVIL CONSPIRACY CLAIM AGAINST DEFENDANTS DAMES, MINER, BROWN, AND MORSE UNDER STATE LAW

23

For Count VII of Plaintiffs' cause of action against Defendants Dames, Miner, Brown, and Morse Plaintiffs state as follows:

93.     Plaintiffs incorporate by reference each and every fact and allegation contained in paragraphs 1 through 42 and 67 through 84 above as if fully set forth herein

94.     Defendants Dames, Miner, Brown, and Morse or two or more of them, entered into an agreement or understanding amongst and between themselves to do an unlawful act, to wit, to wrongfully discharge Plaintiffs in violation of the public policy of the State of Missouri and/or to discriminate against them because of their disabilities in violation of the Missouri Human Rights Act as set forth herein.

95.     Defendants (constituting two or more people) had an unlawful objective to commit the unlawful acts as set forth in paragraph 94 above.

96.     The Defendants had a unity of purpose, common design and understanding, and/or meeting of the minds to commit the unlawful acts against Plaintiffs as set forth in paragraph 94 above.

97.     In furtherance of this conspiracy, the Defendants committed the following overt acts to include but not necessarily be limited to:

        a.     Required Plaintiffs to return to work before they were physically able to do so;

        b.     Refused to accommodate Plaintiffs' physical disabilities, to include but not necessarily be limited to refusing to honor the limitations James was placed under when she returned to work and refusing to permit Michalsen to go to the doctor when needed.

        c.     Refused to allow Casey's employees to call an ambulance for James when

24

she was on the store floor in excruciating pain and unable to stand up due to the pain resulting from her disability/injury.

      d.     Changed James' work schedule from weekdays to weekends after prematurely forcing her to return to work, upon information and belief in an effort to cause her to quit.

      e.     Gave James permission to leave work due to the pain she was suffering from her disability/injury, and then wrote her up for leaving work without permission.

      f.     Began issuing James unfounded Corrective Action Statements after she became disabled/suffered a work-related injury, even though she was regarded as an exemplary employee prior to her disability/injury.

      g.     Told Michalsen that if she did not report to work with her wrist swollen and purple, she would be fired, causing Michalsen to believe that she had been terminated when she choose to see her workers' compensation doctor.  Defendants then falsely reported that Michalsen was terminated for violating Casey's no call no show policy, even though Michalsen had already been fired.

      h.     Refused to allow a Casey's employee to call Michalsen an ambulance after she injured her wrist, instead placing Michalsen in her car, placing her injured wrist on the arm rest, placing the car in drive for Michalsen, and making her drive herself to the hospital.

      i.     Falsely claimed that James violated the company's no call no show policy as the reason to fire her, even though Defendants knew that James was hospitalized as a result of excruciating pain and did not allow her to present evidence that she was in fact hospitalized and should not have been fired after her release from the

hospital.

       j.     Upon information and belief, exacerbated Plaintiffs' injuries as a result of their conduct.

98.    Additionally, and without waiver of the foregoing, upon information and belief the conduct of the Defendants exacerbated Plaintiffs' injuries causing them to incur medical bills and expenses and increasing their physical pain and suffering.

99.    As a direct and proximate result of the actions of the Defendants as alleged herein, James and Michalsen have sustained and will continue to sustain lost wages and other benefits of employment and medical bills and expenses, and have suffered and will continue to suffer physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

100.    Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Plaintiffs in making an award of punitive damages warranted and necessary to punish them and to deter each of them and others from the same or a similar transgressions in the future.

WHEREFORE, Plaintiffs Serita James and Jessica Michalsen pray this Court to enter judgment in their favor and against Defendants Dames, Miner, Brown, and Morse and thereafter:

A.    Order Defendants to make Plaintiffs whole for any and all loses or damages they have suffered including lost wages and other benefits of employment and their medical bills and expenses resulting from any exacerbation of their injuries by Defendants;

B.    Award damages to Plaintiffs for their emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation , as well as damages for their physical pain and suffering caused by the Defendants;

C.      Award Plaintiffs punitive damages against the Defendants named herein in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

PLEBAN & PETRUSKA LAW, LLC


by:  ___/s/ Lynette M. Petruska_____
C. John Pleban #4066
Lynette M. Petruska, #15880
2010 S. Big Bend Blvd.
St. Louis, MO  63117
Telephone:  314-645-6666
Facsimile:  314-645-7376

Attorneys for Plaintiffs